**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Terry Mizell,                    )
                                 )
            Petitioner,          )     Case No. 1:10-CV-53
                                 )
     vs.                         )
                                 )
Warden, Madison Correctional     )
Institution,                     )
                                 )
            Respondent.          )

<u>O R D E R</u>

This matter is before the Court on Petitioner Terry Mizell's petition for a writ of habeas corpus (Doc. No. 3), and Magistrate Judge Litkovitz's Report and Recommendation recommending that the Petitioner's habeas corpus petition should be denied (Doc. No. 10). For the reasons that follow, Petitioner's claims are not well-taken; the Court **ADOPTS** the Report and Recommendation; Petitioner's petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

<u>I. Background</u>

In July 2006, Petitioner claimed that a 2 month old infant had fallen from a bed. The infant did not respond to CPR. Hours later and after speaking with the mother of the infant, it was decided that the infant should be taken to the hospital. Mizell did not inform the mother that he had performed CPR on the child, nor did he explain details of the fall. Once at the hospital, emergency staff began their efforts to save the child. The infant underwent

1

emergency surgery to relieve pressure on his brain. The child survived the incident, but now has cerebral palsy, a smaller brain, and is developmentally delayed. The child undergoes treatment regularly.

Mizell was charged with child endangerment. Mizell pleaded guilty to the charge. Mizell was given the chance to withdraw his plea, once the court decided it would not sentence him to community control. Trial was scheduled to begin on June 4, 2007. On May 31, Mizell was indicted on one count of felonious assault. Mizell did not appear for his June 4th trial date. He was later arrested. The child endangerment and felonious assault cases were combined and set for trial. On the day of trial, Mizell's counsel requested a continuance and a competency evaluation because Mizell was refusing to help counsel plan his defense. After the competency hearing, trial was set for October 9.

On the day trial proceedings commenced, Mizell stated to the trial court that he wanted new counsel. His request was denied. Upset with the decision of the court, Mizell became combative. He ignored requests to calm down and engaged in an altercation with a deputy who was trying to restrain him. Other deputies were called to assist. Deputies asked if Mizell could be placed in a stun belt, due to his uncooperative and combative behavior. A short hearing occurred to discuss the necessity of the stun belt.

Mizell then asked to represent himself and requested a

2

continuance in order to look over the medical records of the victim. He was allowed to proceed *pro se* with appointed counsel acting as standby. The Court informed Mizell that he would be given a few hours to review the medical records, but ultimately the request for a continuance was denied.

Representing himself, Mizell stated that he was unhappy with the way the proceedings were going, including his denial of new counsel. He showed the jury his stun belt, stating that, "[I]f I say or do anything that the Court disagrees with, that officer there will push a button and 50,000 volts of electricity will come through me." The jury was then informed that they could not infer guilt or innocence from the use of the stun belt.

When Mizell gave his opening statement, he continuously asked for a continuance. The trial court denied his request. DaJawana Martin, mother of the infant victim, was asked to testify. Throughout her testimony, Mizell kept speaking over Martin. Mizell's behavior presented an incessant disruption throughout the trial. The court warned Mizell that if his behavior did not cease, he would be removed from the courtroom. Mizell continued this behavior and was removed from the courtroom; standby counsel resumed his role representing Mizell.

Mizell was allowed back into the courtroom on the second day of trial. Trial proceedings soon ended and Mizell was found guilty of child endangerment and felonious assault. Mizell was sentenced

to five years imprisonment for child endangerment, and eight years for felonious assault, with the sentences to be served consecutively.

Mizell then filed a notice of appeal with the Ohio Court of Appeals raising four claims:

> 1. The trial court violated petitioner's right to a fair trial by requiring him to wear a stun belt.
>
> 2. By denying petitioner's motion for a continuance and new counsel, the trial court violated petitioner's right to a fair trial and effective assistance of counsel.
>
> 3. Petitioner's right to self representation was denied when he was removed from the courtroom.
>
> 4. Petitioner's right to a speedy trial was violated by the pre-indictment delay that occurred between charges.

The Ohio Court of Appeals affirmed the judgment of the trial court. Petitioner then appealed to the Ohio Supreme Court. The Ohio Supreme Court refused to hear his appeal "as not involving any substantial constitutional question." Thereafter, in January 2010, petitioner filed this habeas corpus petition, raising the same four claims from above.

Judge Litkovitz's Report and Recommendation concluded that Petitioner is not entitled to any relief on his claims.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254, establishes that a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts

4

unless the adjudication either:

    1. Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

    2. Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A state-court opinion violates the "unreasonable application" clause of § 2254 when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court opinion will also involve the "unreasonable application" of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000). The Supreme Court stated that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. In defining the meaning of the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

### III. Analysis

Petitioner is not entitled to relief on any of the claims raised in his petition for habeas corpus.

### A. Denial of Right to Fair Trial

Petitioner was required to wear a stun belt during the trial proceedings because he was continuously disruptive while court was in session. Petitioner did state that he did not feel that his behavior warranted the use of the stun belt, but he allowed the court to explain to him the necessity of the stun belt and raised no further complaint regarding it. The Sixth Circuit has stated that physical restraints implicate a defendant's right to a fair trial. *Earhart v. Konteh*, 589 F. 3d 337, 347-48 (6th Cir. 2009) (citing *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986))(regarding shackling); *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970)(regarding the prejudicial effect of seeing physical restraints). The U.S. Supreme Court has also established that "the use of physical restraints visible to the jury absent a court determination that they are justified by a state interest specific to a particular trial" violates a defendant's right to a fair trial. *Deck v. Missouri*, 544 U.S. 622, 629 (2005). However, this was not the situation in this case. The stun belt was not visible to the jury until Mizell lifted up his shirt and showed them.

6

*Kennedy v. Cardwell,* 487 F. 2d 101, 110-11 (6th Cir. 1973), establishes that four factors must be considered when imposing physical restraints. The defendant's temperament, the layout of the courtroom and courthouse, defendant's physical condition, and whether there is a less prejudicial but adequate means of security must all be considered before applying physical restraints. *Id.* at 111. The petitioner must have objected to the use of restraints at trial to preserve the issue for habeas review. *E.g., Williams v. McKee*, No. 1:07-cv-688, 2010 WL 3909441, *3-*4 (W.D. Mich. July 21, 2010). If petitioner's statement that his behavior did not warrant the use of a stun belt is considered to be an objection, then the *Kennedy* factors apply. First, regarding Mizell's temperament, he indicated he was upset the court would not allow him new counsel. He attempted to escape from the custody of the deputies. Second, the layout of the courtroom is unknown. Therefore, speculation cannot be made to determine whether less restrictive means were available. However, based on Mizell's altercation with deputies, one can conclude that Mizell might have caused further disruption throughout the proceedings. Third, Mizell was in good health; he did not require any medical attention. The stun belt did not present a danger to his health. Fourth, there were not any less prejudicial means of maintaining security. Other means to quiet the defendant include removing him from the courtroom and binding and gagging him. Removing the defendant, however, prohibits the

him from being present at his own trial.  Binding and gagging the defendant prohibits the him from contributing to his own defense. Furthermore, there was an overwhelming amount of evidence to show that Mizell did endanger the victim's life.  The stun belt alone would not have convinced the jury of the defendant's guilt.  The stun belt was not visible to the jury until Mizell showed it. Showing the stun belt to the jury invited the error that the jury would not be impartial.  "[A] party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit." *Harvis v. Roadway Exp. Inc.*, 923 F.2d 59, 60 (6th Cir. 1991).  Before the court resumed trial, it expressed that there was no need for the jury to know that the defendant was wearing the stun belt.  This demonstrates that the court wanted to ensure impartiality.  Therefore, any error that permitted the use of the stun belt would have been harmless.

The state court's resolution of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established precedent.  Therefore, this claim is not well-taken.

### B. Denial of Continuance and New Counsel

The first day that trial proceedings commenced, Mizell requested new counsel and also stated that he wanted to represent himself.  The court refused to grant Mizell new counsel stating that the attorney he had was "good" and had "won" many cases in that court.  Petitioner was allowed to represent himself with his

8

counsel acting as standby. After being allowed to represent himself, petitioner asked for a continuance to review evidence contained in the medical records. His requested was again denied. The purpose of counsel is to ensure a fair trial. *Strickland v. Washington,* 466 U.S. 668, 689 (1984). The focus is not on a relationship between the accused and his attorney. A defendant is not entitled to a meaningful relationship with his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Mizell's request for new counsel on the first day of trial was inappropriate. There were numerous opportunities beforehand to request new counsel. Due to the petitioner's uncooperative behavior, it is reasonable to assume that the request for new counsel was a ploy to prolong the trial. When asked to explain how counsel was incompetent, Petitioner failed to respond or cooperate. The prosecutor acknowledged that petitioner's counsel was well organized and ready to proceed. Counsel stated that he was willing to proceed even after multiple outbursts and disrespectful behavior by Petitioner.

The right to present a defense may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer,* 523 U.S. 303, 308 (1998) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). There are four factors necessary to decide if a denial of a continuance is arbitrary. "Diligence of party requesting the continuance; likelihood that a continuance would accomplish the purpose

underlying the party's expressed need for a continuance; inconvenience to opposing party, witnesses, and the court; and need for continuance and the harm party might suffer as a result of denial of the continuance" must all be considered. *Scott v. Roberts,* 975 F.2d 1473, 1476 (10th Cir. 1992). Mizell was not diligent in trying to view the victim's medical records. He had over a year to review them but acted uncooperatively whenever defense counsel attempted to explain the evidence. The continuance would only allow Mizell more time to review documents that had already been made available to him. The content of those documents would not have changed the decision of the jury. The request for the continuance was not made in "good faith" in order to actually review the documents. It was a scheme to delay the trial, which would be an inconvenience to the opposing party, the witnesses, and the court.

The state court's resolution of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established precedent. Therefore, this claim is not well-taken.

### C. Denial of Self Representation

Throughout the trial, Mizell had been disruptive and unruly. While the prosecution was questioning a witness, Mizell continued to speak over the witness and prevented the jury and the prosecutor from hearing the responses given by that witness. Mizell was

10

warned that his behavior would lead to him being removed from the courtroom. He continued to disrupt the trial proceedings. Mizell was consequently removed from the courtroom. Standby counsel resumed his role of representation until Mizell was calm enough to re-enter the proceedings.

The right of self representation is not absolute. It can be terminated by a defendant who deliberately engages in serious and obstructionist misconduct, *Faretta v. California,* 422 U.S. 806, 835 (1975). "Self representation rests on an implied presumption that the court will be able to achieve reasonable cooperation." *United States v. Dougherty,* 473 F.2d 1113, 1126 (D.C.Cir. 1972). A defendant can lose his right to be present at trial if he continues to engage in disruptive behavior after being warned by the judge. *Illinois v. Allen*, 397 U.S. 337, 343 (1970).

Mizell was warned by the judge that his behavior was disruptive. He was told to calm down multiple times and that if he did not comply, he could be removed. Mizell had a history of being disruptive. This is evident by the need to use the stun belt. Mizell gave up his right of self representation when he refused to stop disrupting the court.

The state court's resolution of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established precedent. Therefore, this claim is not well-taken.

### D. Denial of Speedy Trial Due to Pre-Indictment Delay

Petitioner was initially indicted on charges of child endangerment. After further review and medical examinations, an indictment for felonious assault was issued. The indictment for felonious assault came ten months after the indictment for child endangerment, and almost a year after the actual incident. Mizell claims that the delay between indictments violated his right to a speedy trial.

The right to a speedy trial concerns the delay after the indictment. "The sole safeguard against pre-indictment delay is the relevant statute of limitations." *United States v. Marion,* 404 U.S. 307, 315 (1971). The Sixth Amendment right to speedy trial does not attach until there has been a formal "arrest, indictment, or other official accusation." *Doggett v. U.S.*, 505 U.S. 647, 655 (1992). If there is an issue of speedy trial pertaining to the Sixth Amendment four factors must be considered: the length of delay, the reason for delay, whether defendant asserted his right to speedy trial, and prejudice to defendant as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Although there was a period of ten months between the two indictments, Mizell's claim is not a Sixth Amendment issue. He was not outside the statute of limitations, therefore he could still be charged with the crime. Numerous cases have held that the Sixth Amendment only applies once one has been accused of a specific crime. *Marion*, 404 U.S. at 315. Mizell claims that there was prejudice because

12

felonious assault carries a heavier sentence than child endangerment. However, the Ohio Court of Appeals reasoned that to show prejudice, one must show a loss of evidence or witness. Mizell could show neither. *State v. Mizell*, Nos. C-070750, C-070751, 2008 WL 4367552, at *6 (Ohio Ct. App. Sept. 26, 2008).

If Mizell's speedy trial claim were colorable, the *Barker* factors would apply. The ten month delay is not an excessively long period of time, as it was necessary for discovery of evidence against the petitioner. Medical examinations were still occurring to determine the well being of the child. Petitioner did not assert his speedy trial right before his appeal nor did he object to the indictment before trial. Petitioner did not demonstrate that he lost any witnesses or evidence as a result of the delay. Balancing the *Barker* factors demonstrates that Mizell has no basis for his claim.

The state court's resolution of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established precedent. Therefore, this claim is not well-taken.

<u>Conclusion</u>

For the reasons stated, petitioner's claims are without merit, as determined by the Report and Recommendation of Magistrate Judge Litkovitz. The Court **ADOPTS** the Report and Recommendation. Petitioner's application for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

A certificate of appealability will not issue with respect to this order because under the first prong of the applicable two-part standard established in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this court is correct in its procedural rulings.  Additionally, Petitioner has failed to make a substantial showing of the denial of a constitutional right because "reasonable jurists could [not] debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that issues presented were adequate to deserve encouragement to proceed further." *Id.* at 483-84 (internal quotation marks omitted).  Petitioner remains free to request issuance of the certificate of appealability from the Court of Appeals. *See* 28 U.S.C. § 2253 (c) and Fed. R. App. P. 22 (b).

With respect to any application by Petitioner to proceed on appeal *in forma pauperis*, the Court certifies pursuant to 28 U.S.C. § 1915 (a)(3)  that an appeal of this order would not be taken in good faith. Therefore, Petitioner is **DENIED** leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24 (a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO ORDERED**

Date July 6, 2011            S/Sandra S. Beckwith
                              Sandra S. Beckwith
                   Senior United States District Judge

14